IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

KEITH LYDELL GADDIS,                )
                                    )
          Petitioner,               )
                                    )
v.                                  )          Case No. CIV-11-1481-F
                                    )
JUSTIN JONES, DIRECTOR,             )
                                    )
          Respondent.               )

## REPORT AND RECOMMENDATION

Andre Armstrong was driving in Oklahoma when his passenger was hit by a gunshot from a nearby car.  The State believed that Keith Gaddis was the driver and shooter in the nearby car and charged him with the use of a vehicle to facilitate the discharge of a firearm. He was convicted and has brought this petition for a writ of habeas corpus.  The petition should be denied.

I.     The Issues

The action involves seven issues:

- A federal court cannot grant habeas relief for a violation of state law.  Here a judge granted a demurrer, but he then changed his mind and bound the defendant over.  A second judge then reversed the demurrer, but again bound Mr. Gaddis over.  Can Mr. Gaddis obtain habeas relief if the State's appeal had been too late under Oklahoma law?

  The answer is *no*.  In deciding that Mr. Gaddis's claim was timely, the state appeals court relied on Oklahoma law.  Habeas relief cannot be based on state-law errors.

- When the state appeals court decides the merits of a claim, the petitioner must show that the court contradicted or unreasonably applied Supreme Court

precedent.  The Supreme Court has not held that the constitution forbids DNA evidence regarding probabilities of a match, and the state district court allowed a witness to testify about the likelihood that DNA on a gun was Mr. Gaddis's.  That ruling was upheld on direct appeal.  When the state appeals court upheld the ruling, did it contradict or unreasonably apply Supreme Court precedent?

The answer is *no*.  Because the Supreme Court had not prohibited evidence of DNA probabilities, the state appeals court acted reasonably under Supreme Court precedent by upholding introduction of the DNA evidence.

- As discussed above, habeas relief is available only when the state appeals court decided the merits by contradicting or unreasonably applying Supreme Court precedent.

   The Petitioner's claim requires consideration of that precedent to testimony about the arrests of two individuals.  The arrests involved perjury, but the witness did not identify the crime and defense counsel didn't object.  As a result, the state appeals court held that use of the testimony did not constitute plain error under Oklahoma law.  Did the state appeals court unreasonably apply Supreme Court precedent when it declined to find plain error in the testimony?

   The answer is *no*, for the state appeals court could reasonably decline to find plain error when no one had identified the crime in front of the jury and defense counsel didn't object.

- Even when the issue involves plain error, the federal district court can only grant habeas relief when the state appeals court had contradicted or unreasonably applied Supreme Court precedent.

   Here the district court must apply that precedent to evidence involving recorded telephone calls that contained incriminating remarks by Mr. Gaddis.  The prosecutor played redacted parts of the recordings, but distributed unredacted transcripts to the jury.  Mr. Gaddis regards the transcripts as prejudicial, but his attorney didn't object on this ground during the trial.  Did the OCCA contradict or unreasonably apply Supreme Court precedent by declining to find plain error?

The answer is *no*.  Supreme Court precedent didn't require the OCCA to find plain error.  Oklahoma law allows use of the transcripts, and the Petitioner has not identified anything in the transcripts that would have prevented a fair trial.

- Due process is denied when a prosecutor prevents a fair trial by giving an improper closing argument.  The prosecutor said twice in his closing that the gunshot could have been fatal.  Mr. Gaddis regards these comments as prosecutorial misconduct, and the OCCA rejected the claim under the plain-error standard.  Did the OCCA contradict or unreasonably apply Supreme Court precedent?

  The answer is *no*, for the Supreme Court has not prohibited argument about the impact of the crime and the prosecutor's closing involved the seriousness of what Mr. Gaddis had done.

- A constitutional violation takes place when a trial attorney's representation is deficient and prejudicial.  Mr. Gaddis alleges ineffective legal representation when his trial attorney asked about gang membership and didn't object to the prosecutor's closing.

  The ineffective-assistance claim involves three incidents during the trial.

  The first took place in *voir dire*.  By then, the court had excluded evidence of gang membership but then allowed the use of transcripts referring to Mr. Gaddis by a nickname that was arguably identified with gangs.  When a venireperson spoke about a bad family experience involving gangs, defense counsel asked about her ability to remain fair if the prosecutor were to present evidence of gang membership.  The Petitioner regards this question as foolish.

  The second incident took place during closing argument.  When the prosecutor said two times that the gunshot could have proved fatal, Mr. Gaddis's attorney didn't object.  The Petitioner thinks the attorney should have objected both times.

  The third incident took place during the cross-examination of the man who was shot.  Mr. Gaddis's attorney asked the man if he was in a gang.  The Petitioner regards the question as foolish.

  When confronted with these claims, the Oklahoma Court of Criminal Appeals held that counsel was not ineffective.  Did this holding contradict or unreasonably apply Supreme Court precedent?

The answer is *no*.  The OCCA could reasonably apply Supreme Court precedent by rejecting Mr. Gaddis's claims of ineffective assistance.  In light of the advisory nature of the pretrial ruling, Mr. Gaddis's attorney could reasonably try to ensure fairness by questioning the venire about its ability to stay impartial if the State were to present evidence of gang activity.  And the attorney did not prejudice Mr. Gaddis by declining to object in closing argument or asking a witness about the victim's membership in a gang.

- When the state appeals court decides the merits, habeas relief is available only if the court contradicted or unreasonably applied Supreme Court precedent. The trial judge instructed the jury on the presumption of innocence.  But, according to Mr. Gaddis, the judge gave the instruction too late because he had already summarized the charges.  The Supreme Court has never gone this far, and the OCCA rejected the claim.  Was the OCCA's decision reasonable under Supreme Court precedent?

  The answer is *yes*.  The Supreme Court has never held that the trial judge must instruct on the presumption of innocence before he discusses the charges.  As a result, the OCCA did not contradict or unreasonably apply Supreme Court precedent.

II.   Standard for Habeas Relief

The Court can grant habeas relief "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a) (2006).  The applicable standard turns on how the state appellate court had treated the underlying issue.

When the state appellate court does not address the merits, the federal district court exercises its independent judgment.  *See, e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th

Cir. 2002).   In this situation, the Petitioner must show a constitutional violation by a preponderance of the evidence.[1]

If the OCCA denied the claims on the merits, the federal district court bears a "secondary and limited" role.  *Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998) (citation omitted).

For example, when factual allegations are involved, a federal court can grant habeas relief only if the state court had made "an unreasonable determination of the facts in light of the evidence presented."  AEDPA, 28 U.S.C. § 2254(d)(2) (2006).

The federal district court also limits its scrutiny of legal determinations when the state's highest court has addressed the merits.  In these circumstances, the federal court considers only whether the state appeals court's conclusions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  AEDPA, 28 U.S.C. § 2254(d)(1) (2006).

When the merits had been decided in state court, the threshold issue is whether federal law clearly establishes the constitutional protection underlying the habeas claim.  "A legal principle is 'clearly established' . . . only when it is embodied in a holding of [the Supreme Court]."  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173 (2010) (citations omitted).  For this purpose, Supreme Court holdings "must be construed narrowly and consist only of

---

[1]    *See Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (*per curiam*) ("Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." (citation omitted)).

something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).  In the absence of Supreme Court precedent, "a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law." *Id*. at 1017 (citation omitted).

If the underlying constitutional right is clearly established, the federal district court must ask whether the state court decision was contrary to Supreme Court precedent.  *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008).  These circumstances may exist when the state court had:

- applied a rule that conflicted with governing Supreme Court holdings or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (citation omitted).

If these circumstances are absent, the federal district court must determine whether the state court decision involved an unreasonable application of Supreme Court precedent. *See Hicks v. Franklin*, 546 F.3d at 1283.  Application of Supreme Court precedent is considered "unreasonable" when the state court unreasonably extends, or refuses to extend, prior decisions.  *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

III.    The State's Alleged Failure to Timely Appeal the Ruling at the Preliminary Hearing

The first habeas claim involves the timing of the State's appeal over a demurrer. According to Mr. Gaddis, the prosecutor was too late when he appealed the initial finding on probable cause.  Br. of Pet'r 3-5.  This claim is invalid.

A.     The Finding of Probable Cause

At the preliminary hearing, a judge granted a demurrer and said that he would not find probable cause on the charge involved here.  *See* Remand Hr'g 3, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Apr. 17, 2009) (discussing this ruling).  On the same day, the prosecutor said he would appeal.  *See* Tr. 3-4, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Apr. 2, 2009) (discussing the prosecutor's announcement of an appeal).  Shortly thereafter, the judge reconvened and changed his mind, announcing that he would find probable cause.  *See* Remand Hr'g 3-4, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Apr. 7, 2009) (discussing the change in the ruling).[2]  With the favorable ruling, the prosecutor had no reason to pursue an appeal.

Mr. Gaddis later moved to quash the Information.  Defs.' Am. Mot. to Quash, Set Aside Info. & Dismiss with Prejudice, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Nov. 17, 2008).  A judge vacated the bind-over decision and gave the prosecutor more time to appeal the initial finding that there wasn't probable cause.  Mot. Hr'g Tr. 13-14, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Mar. 16, 2009).  The prosecutor

---

[2]     The habeas record includes the testimony at the preliminary hearing, but not the judge's two rulings or the prosecutor's announcement of an appeal.

filed a notice of appeal on the same day,[3] and Mr. Gaddis's attorney objected to the notice on grounds that the judge couldn't extend the time to appeal.[4]

A second judge overruled the objection and found probable cause on the charge.[5] The state appeals court upheld the ruling, stating that the prosecutor's appeal had been timely. *Gaddis v. State*, Case No. F-2010-179 (Okla. Crim. App. Nov. 28, 2011) (unpublished op.).

In this habeas action, the Petitioner alleges denial of due process and equal protection on grounds that the prosecutor had taken too much time to appeal the initial demurrer.  Br. of Pet'r 4-5.

B.    Violation of State Law

Mr. Gaddis has not expressly relied on state law.  But his claim assumes that the state courts had allowed too much time for an appeal.  This assumption involves state law, and a violation of Oklahoma law would not support habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

---

[3]     Notice of Intention to Appeal, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Mar. 16, 2009).

[4]     Mot. Hr'g Tr. 18-19, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Apr. 2, 2009).

[5]     Mot. Hr'g Tr. 18-19, 31-33, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Apr. 2, 2009); Order to Bind Def. Over for Trial, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Apr. 16, 2009).

C.    Due Process and Equal Protection

A denial of due process or equal protection could theoretically support habeas relief. *See supra* p. 4 (quoting AEDPA, 28 U.S.C. § 2254(a) (2006)).   But the state courts' application of their timing rules would not have deprived Mr. Gaddis of due process or equal protection.

### The Court's Need for Independent Judgment

In his direct appeal brief, Mr. Gaddis used the words "due process" and "equal justice."  Br. of Appellant 7, *Gaddis v. State*, Case No. F-2010-179 (Okla. Crim. App. Nov. 28, 2011).  The state appeals court ignored these buzz words and addressed the heart of Mr. Gaddis's claim (timeliness of the prosecutor's appeal).  *Gaddis v. State*, Case No. F-2010-179, slip op. at 2-6 (Okla. Crim. App. Nov. 28, 2011) (unpublished op.).  In doing so, the court held that the prosecutor's appeal had been timely.  *Id.*, slip op. at 4-6.  For the sake of argument, the federal district court can assume the need for independent judgment on the due process and equal protection claims.

### Due Process

The state court's application of state law did not deprive Mr. Gaddis of due process. A due process claim would require Mr. Gaddis to prove denial of fundamental fairness.  *See Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012).  Although Mr. Gaddis disagrees with the OCCA's outcome on the timing issue, he has not supplied any reason to question the fundamental fairness of the court's decision-making process.

The state district court made two rulings against the prosecutor, and he provided notice of appeal on the same day for both rulings. *See supra* pp. 6-7. The state appeals court applied state law in holding that the appeal was timely. *See supra* p. 7. In these circumstances, the Petitioner has not shown a lack of fundamental fairness in the application of state timing rules and the federal district court should reject the due process claim.

<u>Equal Protection</u>

The same is true of the equal protection claim. Mr. Gaddis has not suggested that he was treated differently than anyone else. Thus, his use of the buzz words ("equal protection") does not support habeas relief.

IV.    The Petitioner's Allegations Relating to the Use of Potential DNA Matches, Other <u>Crimes, and Transcripts of Telephone Calls</u>

Mr. Gaddis also seeks federal habeas relief based on: (1) introduction of evidence involving DNA probabilities and other crimes, and (2) use of transcripts for the jury to use when listening to recordings of telephone calls. Br. of Pet'r 5-13. The Court should deny relief on these claims.

A.    <u>The Need for a Constitutional Violation</u>

Generally, habeas relief cannot be based on violation of state evidentiary rules. *Ellis v. Mullin*, 326 F.3d 1122, 1128 (10th Cir. 2002); *see also supra* p. 8 (stating that a violation of Oklahoma law would not support habeas relief). A due process violation would qualify. *See supra* pp. 4, 9. But the Fourteenth Amendment's Due Process Clause is violated only

when the ruling deprives the petitioner of fundamental fairness. *See supra* p. 9 (citing *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012)).

      B.      The Introduction of "Compromised DNA Evidence"

The Petitioner alleges denial of a fair trial when the court allowed introduction of DNA evidence which was "compromised." Br. of Pet'r 5-7. Mr. Gaddis labels the evidence as "compromised" because the samples had contained a "mixture of degraded" DNA. *Id.* The habeas claim is invalid.

On direct appeal, the Oklahoma Court of Criminal Appeals applied the plain-error standard and rejected the claim on grounds that the DNA evidence was relevant. *Gaddis v. State*, Case No. F-2010-179, slip op. at 7-8 (Okla. Crim. App. Nov. 28, 2011) (unpublished op.). This decision was based on the merits of the underlying claim (admissibility of the DNA evidence). *See id.*, slip op. at 8 (stating that the DNA evidence "was properly admitted"). As a result, the question here is whether the OCCA's decision on plain-error grounds constituted a reasonable application of Supreme Court precedent.[6] The answer is *yes*.

The Petitioner argues that introduction of the DNA evidence prevented a fair trial. Br. of Pet'r 7. Liberally construed, this claim could be viewed as one involving a denial of due process. For due process, the Court must ask whether the trial was fundamentally fair.

---

[6]    *See Selsor v. Workman*, 644 F.3d 984, 1024 (10th Cir. 2011) (stating that because the OCCA had decided the merits when it applied the plain-error standard, the federal appeals court had to decide "whether the OCCA's decision was contrary to, or an unreasonable application of," Supreme Court decisions (citations omitted)), *cert. denied*, __ U.S. __, 132 S. Ct. 1558 (2012).

*See supra* p. 9 (citing *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012)).  Because of the generality of the test, the state appeals court is entitled to latitude.[7]  With this latitude, the state court's decision should be considered *reasonable* under Supreme Court precedent.

That Court has never prohibited introduction of DNA evidence solely because the sample had contained a mixture or been degraded.  When confronted with the issue, the federal courts of appeal have frequently held that mixture or degradation of a DNA sample affects the weight of the evidence but not its admissibility.[8]

When the Oklahoma appeals court addressed the issue, it did so against the backdrop of the trial.  There a forensic scientist testified about the number of people that would need to be tested before he could find another individual, besides Mr. Gaddis, that could have contributed to the DNA samples.  II Trial Tr. 136, 140-42, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 9, 2010).

---

[7]      *See Petty v. Rudek*, 2011 WL 1107133, Westlaw op. at 7 & n.20 (W.D. Okla. Feb. 7, 2011) (unpublished report by magistrate judge) (noting that the OCCA should be given considerable leeway in the determination of fundamental fairness), *adopted*, 2011 WL 1107129 (W.D. Okla. Mar. 23, 2011) (unpublished order by district judge), *appeal dismissed*, 470 F. App'x 713 (10th Cir. 2012); *accord Nicklasson v. Roper*, 491 F.3d 830, 836 (8th Cir. 2007) (noting that a "wide range of latitude" is appropriate for state courts, under the AEDPA, in light of the "indeterminate" nature of a "rule of decision" hinging on "the 'essential demands of fairness'" (citation omitted)); *Kemp v. Ryan*, 638 F.3d 1245, 1262 (9th Cir.) ("When a state court is asked to apply a general standard, such as the . . . 'fundamental unfairness' standard . . ., state courts get even greater 'leeway' than is standard under our already-deferential AEDPA framework." (citations omitted)), *cert. denied*, ___ U.S. ___, 132 S. Ct. 553 (2011).

[8]      *See United States v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994) (degradation of a DNA sample); *United States v. Shea*, 211 F.3d 658, 667-68 (1st Cir. 2000) (mixture of a DNA sample); *see also Stills v. Dorsey*, 7 F. App'x 856, 858-60 (10th Cir. 2001) (rejecting a habeas claim involving introduction of a DNA analysis because the objections went to the weight of the evidence rather than its admissibility).

On habeas review, the federal court must determine whether the state appeals court had reasonably applied Supreme Court precedent when it declined to find plain error. *See supra* pp. 4-6, 11 & note 6. The answer is *yes*. As noted above, the Supreme Court has never held that DNA evidence is inadmissible when it is mixed or degraded. *See supra* p. 12. And, other federal appeals courts have frequently held that mixture or degradation of a DNA sample affects the weight of the evidence — but not its admissibility. *See supra* p. 12 & note 8.

The federal district court need not decide whether these holdings are correct. *See supra* pp. 4-6. Instead, the question here is simply whether the state appeals court had reasonably applied Supreme Court decisions when analyzing the general test of fundamental fairness through the deferential lens of plain-error review. *See supra* pp. 4-6, 12 & note 7. "When no authority from the Supreme Court or this circuit would compel a determination that there was error and there is contrary authority in other circuits, the error can rarely be plain." *United States v. Baum*, 555 F.3d 1129, 1136 (10th Cir. 2009) (citation omitted). Thus, in applying these general and deferential standards, the federal district court should hold that the OCCA had reasonably applied Supreme Court precedent.[9]

---

[9]     *See Cummings v. Polk*, 475 F.3d 230, 239 (4th Cir. 2007) (holding that when the state court had rejected a claim on plain-error review and the Supreme Court had not decided the underlying issue, the state court's decision could not be considered contrary to, or an unreasonable application of, clearly-established federal law as determined by the Supreme Court).

C.    The Introduction of "Other Crimes Evidence"

The State accused Mr. Gaddis of trying to persuade Mr. Johnson to change his testimony. That accusation led to a perjury charge against Mr. Gaddis. *See* Br. of Pet'r 8. The trial court permitted evidence of the Petitioner's attempt to alter Mr. Johnson's testimony. Hr'g Tr. 18-19, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Jan. 22, 2010). But the court didn't allow mention of a perjury charge. *Id.*

Even though the court excluded mention of the charge, Mr. Gaddis argues that the ruling became meaningless when one witness referred to arrests involving Mr. Johnson, Mr. Gaddis's mother, and the Petitioner's girlfriend. *See* III Trial Tr. 7, 9, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 10, 2010). The Petitioner admits that the word *perjury* was not used, and he does not object to introduction of the evidence about his attempt to change Mr. Johnson's statement. *See* Br. of Pet'r 9-10. Instead, the Petitioner argues that the jury could have figured out that the arrests had been for perjury. *Id.* at 10.

On direct appeal, the OCCA found no plain error in allowance of the testimony. *See Gaddis v. State*, Case No. F-2010-179, slip op. at 9 (Okla. Crim. App. Nov. 28, 2011) (unpublished op.). The court reasoned:

> Gaddis provides no authority for the proposition that it is prejudicial error to introduce evidence of the arrest of third parties when the evidence of the underlying conduct that led to the arrest is highly relevant to establishing the defendant's motive or consciousness of guilt for the crime for which he is charged. In the absence of such authority, and given the attenuated nature of this claim (i.e, that VanGurp's testimony directly implicated third parties in the commission of some other unspecified crimes, possibly perjury, but implicated Gaddis only by inference, if at all), it is neither plain nor obvious that any legal

error occurred.  In the absence of plain or obvious legal error, it is not possible to conclude that any of Gaddis's substantial rights were violated, or that VanGurp's brief testimony about the arrest of these other individuals somehow represents a miscarriage of justice.

*Id.* at 10-11.

This decision was based on the admissibility of the investigator's testimony.  As a result, the federal court must apply AEDPA deference to the state court's application of the plain-error standard.  *See supra* p. 11 & note 6.

To apply that deference, the habeas court begins by asking whether the Supreme Court has decided the issue of admissibility.  *See supra* pp. 5-6.  The answer is *no*, for that Court has never addressed the constitutionality of testimony about the arrest of someone who is not a party or witness.  As a result, the OCCA could not have found plain error from a Supreme Court decision on admissibility.

The only remaining basis for a plain-error claim would have been the impact of the investigator's testimony.  But that testimony would have provided little reason to question the fundamental fairness of the trial.

The testimony served to explain recordings between Mr. Gaddis and his mother (Saundra Gaddis) and his girlfriend at the time (Alfreda Broome).[10]  The investigator explained that he had become familiar with the mother and girlfriend's voices after their arrests.  III Trial Tr. 9, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 10,

---

[10]      III Trial Tr. 9, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 10, 2010); State's Exh. 19, *passim*, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 8-10, 2010).

2010).  But the investigator never said what the mother and girlfriend had allegedly done or why they had been arrested.

Mr. Gaddis thinks the jury would have guessed that the arrests were for perjury.  Br. of Pet'r 9-10.  But why would the jury have guessed perjury charges?  The OCCA rejected this speculation by Mr. Gaddis,[11] and he doesn't say why he thinks the jury would have suspected perjury charges.  In these circumstances, the OCCA could reasonably apply Supreme Court precedent and the evidence to conclude that the evidentiary ruling had not robbed Mr. Gaddis of a fair trial.  Thus, the habeas claim should be rejected.

> D.    The Use of Transcripts of Telephone Calls

The Petitioner made incriminating statements in recorded telephone calls and the prosecutor played redacted parts of the recordings during the trial.  II Trial Tr. 176-83, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 9, 2010).  But the jurors were given unredacted transcripts to follow along as the recordings were played.  *Id.* at 172.  Mr. Gaddis complains that the trial judge should not have allowed the jury to have the transcripts during their deliberations.  Br. of Pet'r 12-13.

At trial Mr. Gaddis's lawyer objected to the transcripts, but only on grounds that they hadn't been prepared by a transcriptionist.  I Trial Tr. 10, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 8, 2010); II Trial Tr. 170-71, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 9, 2010).  The attorney didn't object on grounds of

---

[11]    *Gaddis v. State*, Case No. F-2010-179, slip op. at 10 (Okla. Crim. App. Nov. 28, 2011) (unpublished op.).

relevance or prejudice.  *See* I Trial Tr. 10, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co.

Dist. Ct. Feb. 8, 2010); II Trial Tr. 170-71, *State v. Gaddis*, Case No. CF-2008-178 (Okla.

Co. Dist. Ct. Feb. 9, 2010).  As a result, the state appeals court's inquiry was limited; even

if the transcripts should have been excluded, the court could reverse only if the due process

violation had constituted plain error.[12]  The OCCA rejected the claim under this standard.

*Gaddis v. State*, Case No. F-2010-179, slip op. at 11-13 (Okla. Crim. App. Nov. 28, 2011)

(unpublished op.).

The OCCA's disposition was reasonable under Supreme Court precedent because any

error would not have been plain to the trial judge or the state appeals court.  By the time of

the OCCA's decision to uphold the ruling at Mr. Gaddis's trial, the court had already held

in *Brassfield v. State* that the trial judge could allow the jurors to follow along with

transcripts.  *Brassfield v. State*, 719 P.2d 461, 462 (Okla. Crim. App. 1986).  And the Tenth

Circuit Court of Appeals had upheld the constitutionality of this procedure when it rejected

a similar habeas claim in *Martin v. Kaiser*, 907 F.2d 931, 935 (10th Cir. 1990).

The trial judge here was familiar with *Brassfield* and stated that he was following the

procedure approved in *Brassfield*.  II Trial Tr. 171, *State v. Gaddis*, Case No. CF-2008-178

(Okla. Co. Dist. Ct. Feb. 9, 2010).  Although Mr. Gaddis's attorney had objected, her only

stated concern involved identity of the transcriptionist.  *See supra* pp. 16-17.  The attorney

---

[12]     *See Coddington v. State*, 254 P.3d 684, 704 (Okla. Crim. App. 2011) (holding that a party
had "waived all but plain error" by objecting to use of a transcript on grounds differing from those
presented on appeal).

didn't question the accuracy, and a witness testified that the transcripts were "substantively accurate."  II Trial Tr. 169-70, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 9, 2010).

With this testimony, the trial judge allowed the jury to use the transcripts to help follow along as the recordings were played in court.  I Trial Tr. 11, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 8, 2010); II Trial Tr. 171, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 9, 2010).  When the judge made this ruling, he told the jury that it was not to consider the transcripts as evidence and the jury presumably followed that instruction.[13]

With the OCCA's approval of this procedure in *Brassfield*, the Tenth Circuit's approval of the procedure in *Martin*, testimony that the transcripts were substantively accurate, and the trial judge's issuance of a limiting instruction, the state appeals court could reasonably apply Supreme Court precedent to conclude that the judge didn't commit plain error by allowing the jury to follow along with the transcripts.  Thus, the habeas claim should be rejected.

---

[13]     *See* II Trial Tr. 171-72, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 9, 2010) (trial judge's instruction to the jury regarding the transcripts); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions." (citation omitted)).

E.      Summary

The Petitioner has not shown a due process violation through the use of:  (1) evidence

about potential DNA matches or arrests involving his mother and girlfriend, or (2) transcripts

of telephone calls.  As a result, these habeas claims should be rejected.

V.      Prosecutorial Misconduct

Mr. Gaddis also alleges misconduct in the prosecutor's closing argument.  Br. of Pet'r

13.  This allegation is based on the prosecutor's comments that the victim (Melvin Bishop)

could have died from the gunshot.  *Id.*; *see* II Trial Tr. 9, *State v. Gaddis*, Case No. CF-2008-

178 (Okla. Co. Dist. Ct. Feb. 9, 2010) (identifying the victim as Melvin Bishop).

The OCCA rejected this claim, holding that "[t]he prosecutor's comments during

closing argument that the shooting victim's injuries were nearly fatal were fair comment on

the evidence and therefore, not plain error as prosecutorial misconduct."  *Gaddis v. State*,

Case No. F-2010-179, slip op. at 13 (Okla. Crim. App. Nov. 28, 2011) (unpublished op.).

The OCCA's decision was reasonable under Supreme Court precedent.

The Supreme Court has held that the Fourteenth Amendment's Due Process Clause

entitles a defendant to fundamental fairness in the prosecutor's conduct at trial.[14]  Counsel's

failure to object, "while not dispositive, is relevant to a fundamental fairness assessment."

*Walker v. Gibson*, 228 F.3d 1217, 1241 (10th Cir. 2000) (citation omitted), *overruled in part*

---

[14]     *See Greer v. Miller*, 483 U.S. 756, 765 (1987) ("This Court has recognized that prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" (citation omitted)); *see also supra* pp. 9-11 (discussing the fundamental-fairness test for due process claims).

*on other grounds*, *Neill v. Gibson*, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001) (*en banc*).  One

appeals court explained:

> The absence of a timely objection is particularly significant to a claim
> of prosecutor misconduct in closing argument.  Defense counsel heard the
> alleged misconduct and was in a far better position to judge its significance to
> the trial than an appellate court reading a cold transcript.  The trial court also
> heard the alleged misconduct and likewise was in a better position to judge its
> significance.  The trial court has the power to intervene *sua sponte*, for
> example, with a criticism of the prosecutor or a cautionary instruction.  But
> that sort of interruption risks frustrating defense counsel's tactical decision not
> to object.

*James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999) (citation omitted).

The Petitioner complains about two comments in the prosecutor's closing argument.

The first one was:  "Mr. Bishop had a shot fired right through his back.  His lung was

collapsed.  He had to have surgery.  You know, had this shot been a few inches the other

direction, one direction or the other, maybe he would not have survived this."  III Trial Tr.

40, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 10, 2010).  The

prosecutor's second comment was:  "Again, I think I discussed, in my initial closing

argument, a few inches one way or the other and we might have a homicide case here."  *Id.*

at 73.

The prosecutor's two statements suggested that the gunshot could have been fatal.

These statements were reasonable.  The gunshot didn't kill Mr. Bishop, but it could have and

"[a] prosecutor is entitled to impress upon a jury the seriousness of the crime charged."[15]

---

[15]     *United States v. Bowman*, 353 F.3d 546, 551 (7th Cir. 2003) (citation omitted); *see also*
*United States v. Lowenberg*, 853 F.2d 295, 303-04 (5th Cir. 1988) (stating that the prosecutor can

Neither the Supreme Court nor the Tenth Circuit Court of Appeals has treated an argument about the seriousness of a crime as a due process violation.  When the prosecutor commented on the danger of the shooting, Mr. Gaddis's attorney didn't object.  *See* III Trial Tr. 40, 73, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 10, 2010).  The trial judge didn't intervene, and the state appellate court didn't regard the prosecutor's argument as plain error.  *See supra* p. 19.

On habeas review, the inquiry is limited:  Did the state appeals court reasonably apply Supreme Court precedent in holding that the prosecutor's argument didn't constitute plain error?[16]  The answer is *yes* because any error would not be considered *plain* when the argument involved seriousness of the crime and this type of closing was not prohibited by a decision of the Supreme Court or the Tenth Circuit.  *See supra* p. 13 (quoting *United States v. Baum*, 555 F.3d 1129, 1136 (10th Cir. 2009)).  In these circumstances, the habeas claim should be rejected.

## VI.   Ineffective Assistance of Trial Counsel

Mr. Gaddis claims that his trial counsel was constitutionally ineffective for twice mentioning gang activity and failing to object to the prosecutor's comments regarding Mr. Bishop's injuries.  Br. of Pet'r 14-16.  The state appeals court rejected the ineffective-

---

impress on the jury the seriousness of the charges).

[16]    *See Douglas v. Workman*, 560 F.3d 1156, 1180 n.15 (10th Cir. 2009) (stating that when the OCCA declined to treat a prosecutor's comments as plain error, habeas relief was unwarranted because the OCCA had reasonably applied Supreme Court precedent).

assistance claims on direct appeal,[17] and this decision was reasonable under Supreme Court precedent.

A.    The Constitutional Test

The Supreme Court "clearly established" federal law in *Strickland v. Washington*, 466 U.S. 668 (1984).  There the Court held that on a claim involving ineffective assistance of counsel, a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial.  *Strickland v. Washington*, 466 U.S. at 690-91.  An attorney's performance is only considered "deficient" if it falls "outside the wide range of professionally competent assistance."  *Id.* at 690.  "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Because of the generality of the *Strickland* test, the state appeals court is given considerate latitude in its analysis.  *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). With this latitude, the federal district court must assess the reasonableness of the OCCA's application of the *Strickland* standard.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785 (2011).

B.    The Attorney's Mention of Gang Activity in *Voir Dire*

The Petitioner claims that his attorney prejudiced the jury by suggesting that the prosecutor had evidence of gang activity when the subject had already been excluded.  Br.

---

[17]    *Gaddis v. State*, Case No. F-2010-179, slip op. at 14-15 (Okla. Crim. App. Nov. 28, 2011) (unpublished op.).

of Pet'r 14-16.  On habeas review, the federal court gives latitude to the OCCA and asks

whether the OCCA had reasonably applied *Strickland*.  *See supra* p. 22.  The answer is *yes*

because the OCCA could reasonably determine that the legal representation was neither

deficient nor prejudicial.

In deciding whether the representation was deficient, the Court considers what the

attorney was doing.  Here the attorney was questioning the venire, a task that is generally

considered trial strategy.  *See Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997)

("An attorney's actions during voir dire are considered to be matters of trial strategy."

(citation omitted)).  The attorney's strategic decisions in *voir dire* are considered reasonable

unless the questions are "so ill chosen that [they] permeate[] the entire trial with obvious

unfairness."  *Id.* (citation omitted).

Here the OCCA could have regarded the questioning as reasonable.

The Court has no way of knowing why the attorney had asked the venire about gang

evidence.  But the actual reasons are not decisive because the issue of reasonableness is

based on an objective test.[18]  To determine the range of possible strategies, the Court must

examine the scope of the rulings on gang evidence when Mr. Gaddis's attorney raised the

subject in *voir dire*.

---

[18]    *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 790 (2011) ("*Strickland* . . . calls for
an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state
of mind." (citation omitted)); *see also Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1407, 1412
(2011) (stating that the court had to entertain all of the possible reasons for counsel to act as they
did).

At a pretrial hearing, defense counsel asked the court to exclude any references to Mr. Gaddis's membership in a gang. Hr'g Tr. 20, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Jan. 22, 2010). The prosecutor responded by saying that he was not planning to use evidence of gang membership. *Id*. With this statement, the trial judge sustained defense counsel's motion. *Id*.

From this interchange, the Petitioner assumes that evidence of his gang membership would be excluded. But Mr. Gaddis's attorney might justifiably have regarded the ruling as tentative and another judge later allowed use of recordings that arguably suggested gang affiliation.

Under Oklahoma law, the pretrial ruling was only advisory and could be reconsidered during the course of the trial. *See Kaiser v. State*, 673 P.2d 160, 161 (Okla. Crim. App. 1983) ("A ruling on a motion in limine is advisory and not conclusive." (citation omitted)). The Oklahoma Court of Criminal Appeals explained: "After a motion in limine is sustained, the party seeking to introduce the evidence must make an offer of proof at trial. This affords the trial court an opportunity to make a final ruling on the evidence." *Cuesta-Rodriguez v. State*, 241 P.3d 214, 240 (Okla. Crim. App. 2010) (citations omitted).

Defense counsel could have been considering that possibility when she raised the issue of gang membership. Earlier in the *voir dire*, a venireperson (Edith Morales) told the prosecutor that her son had been beaten by a gang. I Trial Tr. 77, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 8, 2010). Although the trial judge had excluded

evidence of Mr. Gaddis's gang membership, that ruling was only advisory and could be changed at trial. *See supra* p. 24. In these circumstances, the attorney might have wanted to learn whether Ms. Morales would remain fair if the trial judge were to reconsider the ruling and allow reference to gang activity.

This concern would have been reasonable not only because of the advisory nature of the ruling, but also because of a later decision to allow use of telephone recordings from Mr. Gaddis while he was in jail. These calls repeatedly referred to Mr. Gaddis as "K-Bone." *See* State's Exh. 19, *passim*, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 8-10, 2010). This type of nickname is commonly identified with gangs.[19] Thus, defense counsel had sought exclusion of the recordings on grounds that they had suggested gang affiliation. II Original R. 243, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. May 18, 2010). The trial court rejected this objection and allowed use of the recordings. I Trial Tr. 7-9, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 8, 2010). With this ruling, defense counsel could have worried that Ms. Morales would identify "K-Bone" as a gang-name when she heard the recordings.

Faced with this danger, the attorney could reasonably try to prevent prejudice to Mr. Gaddis by asking a hypothetical. So defense counsel asked Ms. Morales: "If I were to tell

---

[19]    *See People v. Algere*, 2009 WL 2973532, at *22 (Cal. Ct. App. Sept. 17, 2009) (unpublished op.) (stating that the two monikers, "Dirty Dawg" and "Windows," "suggest gang membership"); *State v. Asaeli*, 2009 WL 825786, at *15 (Wash. Ct. App. Mar. 31, 2009) (unpublished op.) (stating that use of individuals' street names "may suggest gang association").

you that the State — that there are going to be some allegations of my client being involved in gang activity, is anything to do with what happened to your son going to interfere with your ability to be fair and impartial?" *Id.* at 112. When Ms. Morales answered *no*, the attorney asked the other venirepersons if they or their friends had been affected by gang activity. *Id.*

The OCCA could reasonably view the hypothetical question to Ms. Morales and the follow-up with the panel as prudent safeguards against prejudice from:

- the references to *K-Bone* in the recordings and

- the potential for the judge to change his pretrial ruling and allow evidence of gang membership during the trial.

The OCCA could also reasonably conclude that the questions did not result in prejudice to Mr. Gaddis. The prosecutor never suggested that Mr. Gaddis was a gang member, and Ms. Morales did not participate on the jury because she was excused through a peremptory challenge. *Id.* at 124. Thus, the OCCA could reasonably conclude that Mr. Gaddis had not shown a reasonable probability of an acquittal or lesser sentence with different questioning of Ms. Morales.

C.       Defense Counsel's Cross-Examination of the Victim

The State's case-in-chief included testimony by Melvin Bishop, who was the person shot. *See supra* p. 19.

On direct- and cross-examination, Mr. Bishop admitted that he was in custody on unrelated charges, had been intoxicated on alcohol and PCP, and had "passed out." II Trial

Tr. 6-9,12, *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 9, 2010).

Defense counsel then asked Mr. Bishop if he was a gang member. *Id.* at 13. The prosecutor

objected on relevance, and the judge sustained the objection. *Id.*

Even though the judge sustained the objection, Mr. Gaddis contends that the question

suggested that he was in a gang. Br. of Pet'r 15. The OCCA rejected the contention, stating

that Mr. Gaddis had not explained how the question would have identified him as a gang

member. *Gaddis v. State*, Case No. F-2010-179, slip op. at 14 (Okla. Crim. App. Nov. 28,

2011) (unpublished op.).

This determination constituted a reasonable application of *Strickland*. Because the

objection was sustained, Mr. Bishop never said whether he was in a gang. *See supra* p. 27.

And even now, Mr. Gaddis does not explain how or why the jury would think he was in a

gang simply because his attorney had asked Mr. Bishop if he were in one. The OCCA

thought that without this logical connection, Mr. Gaddis could not show prejudice. *Gaddis

v. State*, Case No. F-2010-179, slip op. at 14 (Okla. Crim. App. Nov. 28, 2011) (unpublished

op.); *see supra* p. 27. This rationale was reasonable under *Strickland* and the federal district

court should reject the habeas claim.

D.      The Attorney's Failure to Object to the Prosecutor's Closing Argument

Mr. Gaddis complains in part about his attorney's failure to object when the

prosecutor said in closing argument that the gunshot could have killed Mr. Bishop. *See supra*

pp. 19-20. As discussed above, the OCCA held that these statements in closing argument did

not involve plain error.  *See supra* p. 17.  The Petitioner's ineffective-assistance claim assumes that the state trial judge or the state appeals court would have reached a different conclusion if defense counsel had objected.  This assumption is invalid.

The Oklahoma Court of Criminal Appeals is the highest state court on issues of criminal law.  *See State v. Blevins*, 825 P.2d 270, 271 (Okla. Crim. App. 1992) ("This Court is the court of last resort in criminal cases." (citations omitted)).  That court concluded that the prosecutor's comments did not involve plain error.  *See supra* pp. 17, 27-28.  In reaching that conclusion, however, the court also determined that the prosecutor's comments involved fair comment on the evidence.  *See supra* p. 19.  With this determination by the state's highest court on issues of criminal law, the Petitioner cannot show a reasonable probability of an acquittal or lesser sentence if his trial attorney had objected to the prosecutor's closing argument.  *See Miller v. Mullin*, 354 F.3d 1288, 1299 (10th Cir. 2004) (*per curiam*).[20]  Thus, the lack of an objection did not constitute prejudice[21] and the Court should reject the claim.

---

[20]     In *Miller v. Mullin*, a petitioner sought habeas relief based in part on the prosecutor's use of transparencies and defense counsel's failure to object.  *See Miller v. Mullin*, 354 F.3d at 1293-95, 1297.  In upholding the denial of habeas relief, the Tenth Circuit Court of Appeals held that the state appellate court had reasonably applied federal law in holding that use of the transparencies did not constitute plain error.  *Id.* at 1296.  Because the transparencies did not involve plain error, the petitioner could not establish a reasonable probability of acquittal if his attorney had lodged a timely objection.  *Id.* at 1299.

[21]     *See supra* p. 22.

VII.    Alleged Error in the Timing of the Trial Court's Instruction on the Presumption of Innocence

Mr. Gaddis also seeks a writ of habeas corpus based on a failure to instruct on the presumption of innocence "at the first opportunity."  Br. of Pet'r 16.  According to the Petitioner, the trial judge instead waited until he had advised the venire of the charges.  *Id.*

On direct appeal, the OCCA held that the trial judge did not need to instruct on the presumption of innocence before he discussed the charges.  *Gaddis v. State*, Case No. F-2010-179, slip op. at 16 (Okla. Crim. App. Nov. 28, 2011) (unpublished op.).  The state appellate court also noted that the trial judge had instructed on the presumption of evidence during *voir dire*, in opening instructions, and at the conclusion of trial.  *Id.* at 17.  In light of the multiple instructions on the topic, the OCCA concluded that the trial had not become "fundamentally unfair by the timing of the trial court's initial advisement."  *Id.* at 17-18.

Generally, a jury should be instructed on the presumption of innocence.  *See, e.g.*, *Taylor v. Kentucky*, 436 U.S. 478, 490 (1978).  However, the Supreme Court has never held that the instruction must be given "at the first opportunity."  Indeed, the Supreme Court has cautioned that "the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution."  *Kentucky v. Whorton*, 441 U.S. 786, 789-90 (1979) (noting that the proper inquiry is "whether the failure to give such an instruction . . . deprived the respondent of due process of law").  In the absence of clearly-established federal law as determined by the Supreme Court, Mr. Gaddis cannot prevail.  *See supra* pp. 5-6.

The OCCA acted reasonably when it held that the trial was fundamentally fair.  The trial court gave a presumption-of-innocence instruction three times:  during *voir dire*, in the opening instructions, and before jury deliberation.  *See* I Trial Tr. 31 (*voir dire*), 143 (opening instructions), *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. Feb. 8, 2010); III Original R. 537 (Jury Instruction No. 3), *State v. Gaddis*, Case No. CF-2008-178 (Okla. Co. Dist. Ct. May 18, 2010).  Against this backdrop, the OCCA could reasonably conclude that the trial was fundamentally fair even though the trial judge had instructed the jury on the presumption of innocence after (rather than before) discussion of the charges.  As a result, the habeas claim should be rejected.

## RECOMMENDED RULING

The Court should deny the petition for habeas relief.

## NOTICE OF THE RIGHT TO OBJECT

The Petitioner can object to this report and recommendation.  To do so, Mr. Gaddis must file an objection with the Clerk of this Court by November 23, 2012.  *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C.A. § 636(b)(1) (West 2011 supp.).  The failure to timely object would foreclose appellate review of the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF THE REFERRAL

The referral is discharged.

Entered this 6th day of November, 2012.

Robert E. Bacharach
United States Magistrate Judge